Ben Sather
SATHER LAW, PLLC
100 N. 27th Street, Ste. 450
P.O. Box 1115
Billings, MT 59103
Telephone: (406) 294-1700
Facsimile:  (406) 794-0673
ben@satherlawfirm.com

Kristine Larsen (*Pro Hac Vice)*
Skye E. Lazaro
RAY QUINNEY & NEBEKER, P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Telephone: (801) 532-1500
klarsen@rqn.com
slazaro@rqn.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| DR. ANDREW B. CURTIS and BRITTANI CURTIS, <br><br> Plaintiffs, <br><br> v. <br><br> EIDE BAILLY FINANCIAL SERVICES, LLC, E4 INSURANCE SERVICES, LLC, E4 BROKERAGE, LLC, and PRINCIPAL NATIONAL LIFE INSURANCE COMPANY, <br><br> Defendants. | ) Case No.: CV-21-132-SPW-KLD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **PLAINTIFFS' FIRST** <br> ) **AMENDED COMPLAINT AND** <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

-1-

## COMPLAINT

Dr. Andrew B. Curtis and Brittani Curtis, by and through their undersigned counsel, submit their First Amended Complaint against Eide Bailly Financial Services, LLC, E4 Insurance Services, LLC, E4 Brokerage, LLC, and Principal National Life Insurance Company (collectively, "Defendants") and state as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Dr. Andrew B. Curtis ("Dr. Curtis") is an individual residing in Yellowstone County, Montana.

2.     Plaintiff Brittani Curtis ("Brittani") is an individual residing in Yellowstone County, Montana. Dr. Curtis and Brittani are husband and wife.

3.     Defendant Eide Bailly Financial Services, LLC ("EBFS"), is a subsidiary limited liability company with its principal place of business in Fargo, North Dakota and with offices located throughout the western United States, including an office in Billings, Montana.

4.     Defendant E4 Insurance Services, LLC ("E4IS"), is a North Dakota limited liability company with its headquarters in Fargo, North Dakota.

5.     Defendant E4 Brokerage, LLC (the "Brokerage") is either a predecessor in interest or otherwise a related entity to E4IS.

6.     Defendant Principal National Life Insurance Company ("Principal") is a corporation organized and existing under the laws of Iowa, with its principal place

of business located at 711 High Street, Des Moines, Iowa.

7.      Plaintiffs allege the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

8.      Accordingly, Plaintiffs allege this court has jurisdiction over the parties and this matter by virtue of 28 U.S.C. § 1332. Venue is proper in the Billings Division pursuant to L.R. 1.2(c)(5).

## FACTUAL ALLEGATIONS

9.      In August of 2015, Dr. Curtis had just completed his medical fellowship training and moved to Billings, Montana to practice as a Board Certified Anesthesiologist with Billings Clinic.

10.     Dr. Curtis and Brittani rented a home at the time located at 3612 Powderhorn Circle, Billings, MT 59102.

11.     Sometime in 2016, Dr. Curtis and Brittani were introduced to Robert B. Shaw, who was a financial advisor for EBFS, who was also advising other physicians employed by the Clinic.

12.     Mr. Shaw assisted Dr. Curtis and Brittani with financial planning, which included purchasing a term life insurance policy as well as a disability insurance policy.

13.     Upon information and belief, EBFS had an agreement with E4IS and/or the Brokerage for the purpose of selling, procuring, and placing life and disability

insurance policies for clients of EBFS.

14.     On or about September 12, 2016, EBFS, E4IS and/or the Brokerage procured, sold, handled, and managed the purchase of a term life insurance policy issued to Dr. Curtis by Principal National Life Insurance Company ("Principal"), Policy Number 4897369 (the "Life Policy").

15.     The Life Policy has a Face Amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) with an initial level premium period of 20 years and a final conversion date of September 12, 2036. The Life Policy has a Conversion Privilege, which states that the Life Policy may be converted in whole or in part, without evidence of insurability. Brittani is listed as the primary beneficiary under the Life Policy.

16.     The Life Policy Annual Statements and premium notices designate Mr. Shaw and the Brokerage as Dr. Curtis' representatives and designee for purposes of receiving notifications concerning the Life Policy, including but not limited to premium and cancellation notices sent by Principal. The notices from Principal concerning the Life Policy show Dr. Curtis' address as 3612 Powderhorn Circle, Billings, Montana.

17.     Dr. Curtis issued payment to Principal on or about September 27, 2016 for the Life Policy's first annual premium owing in the amount of One Thousand Four Hundred and Sixty Three Dollars 15/100. Dr. Curtis entered into a contractual

relationship with Principal when he purchased this policy.

18.     On or about September 9, 2016, Mr. Shaw and EBFS also procured, sold, managed, and handled the purchase of an Individual Disability Insurance Policy issued to Dr. Curtis by Principal, Policy Number 7904636 (the "Disability Policy"). Dr. Curtis entered into a contractual relationship with Principal when he purchased this policy.

19.     The Disability Policy and annual summaries identify Mr. Shaw at EBFS' office location in Billings, Montana as Dr. Curtis' financial representative for purposes of receiving premium and other notices. The monthly payments for the Disability Policy were $944.87 and were placed on Autopay. The Disability Policy is still in effect and continues to designate Mr. Shaw at EBFS as Dr. Curtis' financial representative and designee for notifications concerning the Disability Policy.

20.     In approximately December of 2016, Mr. Shaw left his employment with EBFS.

21.     Brad M. Kelley is the director of EBFS and upon information and belief, would have become the agent of record for Mr. Curtis' Life and Disability Policies upon Mr. Shaw's departure from EBFS.

22.     Defendants at all relevant times received notifications from Principal regarding payment and premium notices, non-payment of premiums, possible termination of the Life Policy and any other notices concerning possible lapse, or

forfeiture of the Life Policy.

23.    In June of 2017, Dr. Curtis and Brittani purchased and moved into a new home located at 4819 Diamond Falls Road in Billings. They contacted the United States Postal Service to have their mail forwarded to the new address.

24.    Dr. Curtis' practice as an Anesthesiologist was extremely time consuming, demanding, and stressful. In addition, Dr. Curtis held an ecclesiastical position in his church all the while managing his family's finances including among other things, a mortgage, insurance, medical school student loans, car payments, and other expenses and obligations.

25.    Given all the foregoing demands on Dr. Curtis' time, he relied heavily on payment reminder emails or phone calls from his designated representatives, such as Defendants, to notify him regarding policy payment issues, particularly with respect to the Life Policy because the premium was paid on an annual basis.

26.    In August of 2017, Dr. Curtis paid another annual premium to Principal in the amount of One Thousand Four Hundred Sixty-Three Dollars 15/100 ($1,463.15).

27.    After June of 2017, Dr. Curtis did not receive any notifications from Principal regarding premium payments owing or any other notifications concerning termination of his Life Policy.

28.    The notifications from Principal, however, clearly show that EBFS,

E4IS and/or the Brokerage continued to receive notifications regarding Dr. Curtis'
past due and owing premiums and possible termination of his Life Policy.

29.     The Defendants failed to pass along to Dr. Curtis these notifications
concerning the possible lapse and termination of his Life Policy.

30.     After June of 2017, notifications concerning the Disability Policy were
sent to the correct address for Dr. Curtis at 4819 Diamond Falls Road, Billings, MT.

31.     After December of 2016, Mr. Shaw was no longer Dr. Curtis' financial
representative for purposes of receiving notifications concerning the Life Policy
from Principal because he had terminated his employment with EBFS.  Based upon
information and belief, however, EBFS, E4IS, and or the Brokerage continued to
receive notifications concerning the Life Policy but failed to notify Dr. Curtis of the
same and/or notify Principal of Dr. Curtis' change of address.

32.     Defendants failed to notify Principal of Dr. Curtis' change of address
with respect to the Life Policy, failed to forward notifications from Principal
concerning the Life Policy to Dr. Curtis, and failed to have Principal update its
records as to the correct agent of record following the departure of Mr. Shaw in
December of 2016.

33.     The Defendants sold the Life and Disability Policies as a package and
otherwise handled and managed the policies for Dr. Curtis.

34.     On May 20, 2021, Dr. Curtis had a seizure at work. A tumor was found

in his left temporal lobe. He underwent a craniotomy to remove the tumor on May 26, 2021.

35.    A pathology report in June of 2021 found the tumor to be malignant and Dr. Curtis underwent chemotherapy and radiation treatment beginning on July 6, 2021.

36.    In light of the devastating and life altering diagnosis, Dr. Curtis met with Mr. Shaw, who was now employed at US Bank, in July of 2021 to discuss changes in financial planning due to Dr. Curtis' cancer diagnosis and likely limited future life expectancy.

37.    During the meeting with Mr. Shaw, Mr. Shaw helped Dr. Curtis log onto Principal's website to review his Life Policy. To Dr. Curtis' horror and surprise, the only policy Principal showed that was still in force was his Disability Policy. Dr. Curtis was later informed by a Principal representative that the Policy had been cancelled for non-payment of premium as of October 2, 2018.

38.    A Principal representative told Dr. Curtis that the notice of termination was mailed to Dr. Curtis on or about October 9, 2018, at the incorrect address of 3612 Powderhorn Circle.

39.    While ordinarily the Life Policy could have been reinstated because Dr. Curtis contacted Principal within the three-year grace period, he had to complete an "Application for Reinstatement of Individual Life Insurance" document, which

-8-

requested his health information. Dr. Curtis was informed that it is very unlikely that Principal will reinstate the Life Policy due to his cancer diagnosis.

40.    Had the Defendants notified Dr. Curtis that his Life Policy was going to lapse or be cancelled due to non-payment of premiums, he would have immediately paid the premium.

41.    The realization that his Life Policy has terminated and, therefore, Brittani and his five young children will not have the financial security of the insurance proceeds upon his death, has caused extreme emotional and mental anguish for both Dr. Curtis and Brittani.

## CLAIMS FOR RELIEF

### COUNT ONE

### NEGLIGENCE AGAINST ALL DEFENDANTS

42.    Plaintiffs reallege and incorporate herein each of the preceding paragraphs as if fully set forth herein.

43.    Defendants owed the Plaintiffs duties of care as their financial representatives, insurance agents and/or brokers with respect to the Life Policy purchased by Dr. Curtis through the Defendants, including a duty to notify Dr. Curtis concerning any premiums due and owing under the Life Policy, notify Dr. Curtis of any imminent lapse in insurance coverage and/or termination of the Life Policy and the consequent loss of the $2,500,000.00 life insurance proceeds for Brittani in the

event of Dr. Curtis' untimely death, and a duty to keep Principal updated regarding Dr. Curtis' current address and the correct financial representative or agent.

44.    Defendants knew that Dr. Curtis was relying on them to manage and handle his insurance policies, including forwarding notifications received from Principal concerning the Life and Disability Policies.

45.    Defendants breached their duties in at least the following ways: by failing and neglecting to notify Dr. Curtis of the non-payment of premiums, failing and neglecting to notify Dr. Curtis of the termination of his Policy on October 2, 2018, or prior to Dr. Curtis' cancer diagnosis, and failing to update their records as to Dr. Curtis' address and the current financial representative or agent.

46.    Defendants knew, or should have known, that by failing to follow their normal procedure, agreement, and business practice of notifying their clients, such as Dr. Curtis, of any imminent lapse in coverage or termination that Dr. Curtis and his intended beneficiary under the Life Policy would be harmed and damaged, by losing the benefit of this $2,500,000.00 life insurance policy.

47.    As a result of the foregoing inactions by Defendants, the Defendants breached the standard of care in the industry for financial representatives and insurance agents/brokers.

48.    As a direct and proximate result of Defendants' breach of its duties, Plaintiffs have been and will be damaged in the amount of at least $2,500,000.00,

plus such other and additional special, general, consequential, and other damages as shall be shown at trial.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

49.    Plaintiffs reallege and incorporate herein each of the preceding paragraphs as if fully set forth herein.

50.    As the Plaintiffs' financial representatives and insurance agents/broker of record, Defendants owed a fiduciary duty to Dr. Curtis and Brittani as the intended beneficiary under the Life Policy.

51.    Defendants knew that Dr. Curtis was placing his trust and reliance on them to manage and handle his Life Policy, including having the Defendants notify Principal concerning Dr. Curtis' change of address and notify Principal regarding the correct financial advisor and/or agent, and forwarding notifications received from Principal concerning the Life and Disability Policies to Dr. Curtis.

52.    Defendants breached their fiduciary duty in at least the following ways: by failing and neglecting to notify Dr. Curtis of the non-payment of premiums failing, failing to inform Principal of Dr. Curtis' change of address, notifying Principal regarding the correct financial advisor and/or agent, forwarding notifications received from Principal concerning the Life and Disability Policies to Dr. Curtis, and failing to notify Dr. Curtis of the termination of his Policy on October

-11-

2, 2018.

53.     These breaches resulted in Dr. Curtis not having the peace of mind to rely upon the Defendants' assurances that the Life Policy he purchased through them would provide financial security for Brittani and his five children in the event of his death.

54.     Defendants knew, or should have known, that by failing to follow their normal procedure, agreement, business practice, and requirement under Montana law to notify Dr. Curtis of any imminent lapse in coverage or termination of the Policy, that he and his intended beneficiary under the Life Policy, would be harmed and damaged by losing the benefit of this $2,500,000.00 life insurance proceeds in the event of Dr. Curtis' untimely death.

55.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs have been and will be damaged in the amount of at least $2,500,000.00, plus such other and additional special, general, consequential, and other damages as shall be shown at trial.

## COUNT THREE

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

56.     Plaintiffs reallege and incorporate herein each of the preceding paragraphs as if fully set forth herein.

57.     This Count is brought pursuant to § 27-8-102, MCA, § 27-8-202, MCA,

and § 27-8-203, MCA in that Plaintiffs seek to settle and afford relief from uncertainty and insecurity with respect to their rights under the Life Policy.

58.     Dr. Curtis obtained the Life Policy issued by Principal through the Defendants.

59.     The Defendants received a commission as a result of Dr. Curtis' purchase of the Life Policy.

60.     Brittani is the beneficiary under the Life Policy.

61.     The Life Policy has a Face Amount of $2,500,000.00.

62.     The Initial Premium Period was for 20 years and the final conversion date was September 12, 2036. The Life Policy has a Conversion Privilege, which states that the Life Policy may be converted in whole or in part, without evidence of insurability.

63.     The Defendants, as Dr. Curtis' financial representative and broker of record, received notifications concerning the Life Policy, including but not limited to, premium and cancellation notices sent by Principal.

64.     In August of 2018, Defendants received the annual premium notice for the Life Policy, which Defendants knew or should have known was addressed to Dr. Curtis' incorrect mailing address.

65.     In September of 2018, Defendants received notification from Principal that the Life Policy had entered a grace period and would terminate on October 02,

2017, if the premium payment was not received.

66.     In October of 2018, Defendants received notification from Principal that the Life Policy had terminated and was cancelled and Dr. Curtis' beneficiary, Brittani, would not receive the Face Amount of the Policy in the event of Dr. Curtis' death.

67.     Dr. Curtis was not aware that his Life Policy had cancelled and was terminated until after he received a cancer diagnosis.

68.     As of this date, Principal has refused to reinstate the Life Policy.

69.     As a result of the actions and/or inactions mentioned in the foregoing allegations, Defendants must step into the shoes of the insurer, Principal, and pay the Face Amount of the Policy to Brittani upon Dr. Curtis' death.

70.     The realization that his Life Policy has been cancelled on the heels of Dr. Curtis' malignant brain tumor diagnosis and the uncertainty and doubt created by not knowing whether his wife and children will be financially secure upon his death has caused extreme emotional and mental stress on the Plaintiffs.

71.     The Plaintiffs are entitled to have this doubt and uncertainty removed prior to Dr. Curtis' death.

72.     As a result of Defendants' failure to fulfill their duties and obligations owed to Dr. Curtis, Brittani and her children's financial future has been put substantially at risk due to the loss of the Face Amount of the Life Policy.

WHEREFORE, Plaintiffs request that the Court make the following declarations and decisions in their favor and against Defendants:

1.     The Defendants are liable, jointly and severally, to Brittani as Dr. Curtis' intended primary beneficiary under the Life Policy, for the full Face Amount of the Life Policy in the amount of $2,500,000.00 upon Dr. Curtis' death; and

2.     Alternatively, the Court order the Defendants reinstate the Life Policy exactly as it existed at the time Dr. Curtis purchased the Life Policy; and

3.     Plaintiffs are entitled to all other provable losses and damages stemming from Defendants' inactions as set forth in the foregoing allegations and causes of action.

4.     Plaintiffs are entitled to their reasonable attorney fees and costs pursuant to § 27-8-313, MCA.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in the amount of all compensatory and consequential damages, including damages for interest, fees, penalties, and costs, and all such further damages as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all of the issues in this action.

DATED this 14th day of February, 2022.

SATHER LAW, PLLC

By:   /s/ Ben T. Sather
        Ben T. Sather

RAY QUINNEY & NEBEKER, P.C.

By:   /s/ Kristine Larsen
        Kristine Larsen (*Pro Hac Vice*)

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of February, 2022, a copy of the foregoing was served on the following interested parties, by the means indicated:

  1-3   CM/ECF
\_\_\_\_\_ Hand Delivery
\_\_\_\_\_ Mail
\_\_\_\_\_ Overnight Delivery Service
\_\_\_\_\_ Fax
\_\_\_\_\_ Email

1.     Clerk, U.S. District Court

2.     Leonard H. Smith
    CROWLEY FLECK, PLLP
    490 North 31st Street, Ste. 500
    P.O. Box 2529
    Billings, MT 59103
    lsmith@crowleyfleck.com

3.     Brian L. Taylor
    Talia Damrow
    HALL & EVANS, LLC
    175 North 27th Street, Ste. 1101
    Billings, MT 59101
    taylorb@hallevans.com
    damrowt@hallevans.com

SATHER LAW, PLLC

By:   /s/ Ben T. Sather
      Ben T. Sather

*Attorney for Plaintiffs*

-17-